UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

ERIN KENNETH GORMSEN,      )
                           )
    Petitioner,            )   Civil Action No. 15-CV-85-HRW
                           )
v.                         )
                           )
JODIE SNYDER-NORRIS, *Warden*, )   **MEMORANDUM OPINION**
                           )   **AND ORDER**
    Respondent.            )
                           )

\*\*\*\*　\*\*\*\*　\*\*\*\*　\*\*\*\*

Petitioner Erin Kenneth Gormsen is confined by the Bureau of Prisons ("BOP") in the Federal Correctional Institution ("FCI")-Ashland, located in Ashland, Kentucky. Proceeding without an attorney, Gormsen has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his prison disciplinary conviction at another facility which resulted in the loss of seven (7) days of his good-time credits ("GTC").[1] Gormsen seeks an order expunging that disciplinary conviction and reinstating his forfeited GTC. Gormsen has paid the $5.00 filing fee. [D. E. No. 3]

In conducting an initial review of habeas petitions under 28 U.S.C. § 2243, the Court must deny the relief sought "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United

---

[1] Gormsen was convicted of a high-level disciplinary infraction on May 20, 2014. It is unclear what Gormsen's exact physical location was when he was charged with the institutional violation on May 6, 2014; he was either confined in the Federal Prison Camp ("FPC")-Montgomery, located in Montgomery, Alabama, or in a county jail near FPC-Montgomery, waiting to be transferred to another BOP facility. It appears most likely that Gormsen was confined in FPC-Montgomery when he was *charged* with the prison offense, but that his disciplinary hearing transpired two weeks later in the county jail, while was waiting to be transferred.

1

States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). Because Gormsen is not represented by an attorney, the Court evaluates his petition under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). Thus, at this stage of the proceedings, the Court accepts as true Gormsen's factual allegations and liberally construes his legal claims in his favor. As explained below, however, Gormsen's habeas petition will be denied because he has not alleged facts supporting his claim that his disciplinary conviction should be expunged, or that his GTC should be reinstated.

## BACKGROUND

On May 7, 2014, "G." Fischer, Correctional Officer ("CO") at FPC-Montgomery, conducted an inventory of Gormsen's grey-mesh sports bag, and while doing so, discovered amongst Gormsen's work-out gear a black-colored pill that had the word "Danabol" written on it. [D. E. No. 1-1, p. 1, ¶ 11] CO Fischer researched the pill and consulted with the prison's Physician's Assistant Aaron McNeil,[2] who concluded that "Danabol" is an anabolic steroid. [*Id.*] CO Fischer determined that Gormsen was possessing the pill without a prescription, and issued the Incident Report charging Gormsen with "Possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff" in violation of BOP Prohibited Acts Code ("PAC") 113. [*Id.*, ¶ 11] The Incident Report states that the pill was photographed, and that a chain of custody form was completed and delivered to the Special Investigations Staff. [*Id.*, ¶ 9]

---

[2] In his May 7, 2014, Memorandum to Lieutenant Harris, McNeil states that he was asked to identify a black six-sided tablet that had "DIANABOL" inscribed on it. [D. E. No. 1-1, p. 5] McNeil states that his internet investigation eventually revealed that the black, six-sided tablet was an orally-effective anabolic steroid known as Methandrostenolone (trade names Averbol, Dianabol, Danabol), also known as metandienone, methandienone, and informally known as "Dianabol." [*Id.*] McNeil provided two pages of material printed from the internet, which explain "Dianabol" and Methandrostenolone" in more clinical terms. *See id.*, pp. 6-7.

2

As part of the investigation process, CO "A." Morales was interviewed, and Morales stated that he went to the "weight pile" to retrieve inmate Gormsen's bag, and that when he returned to the "Ops Center" and asked Gormsen if the bag belonged to him, Gormsen replied, "Yes." [*Id.*, p. 2, ¶ 25][3] When Gormsen received the Incident Report, he stated, "I have never seen that pill before. The pill is not mine. Officer Morales got my bag for me off the weight pile. I don't even know if he got the right bag because I never saw it." [*Id.*, p. 2, ¶ 24]

According to the Incident Report "Gormsen, Eric, Reg. No. 59483-019, remains in the Elmore County Jail and this incident report is being forwarded to the Montgomery Unit Disciplinary Committee for further disposition." [*Id.*, p. 2, ¶ 27, "Action Taken"] Gormsen told the UDC, "It's not mine and I don't know how it got in the bag. Also, the incident report has gray mesh bag [illegible] my mesh bag is black." [*Id.*, p. 1, ¶ 17] On May 8, 2014, The UDC referred the charge to a Disciplinary Hearing Officer ("DHO") for resolution. [*Id.*, ¶ 20]

On May 14, 2014, a disciplinary hearing took place, over which DHO "G." Otero presided. Gormsen states that the hearing transpired at the county jail where he was temporarily being held while in transit to a higher security BOP facility. [D. E. No. 1, p. 2, ¶ 6] On May 20, 2014, Otero prepared a Report summarizing all aspects of the hearing, stating that at the hearing, Gormsen had waived staff representation and had testified as follows: "The pill was mine and was given to me by another inmate that left two months ago." [D. E. No. 1-2, p.1, § III (B)] DHO Otero's Report states that Gormsen had requested witnesses; that no witnesses were called

---

[3] Gormsen attached as an exhibit to his § 2241 petition a May 7, 2014, written statement from CO "A." Morales to Lieutenant "W." Harris. [D. E. No. 1-1, p. 4] Morales stated that on May 6, 2014, he went to the weight pile to retrieve inmate Gormsen's bag, and that when he returned to the "Ops Center," he asked Gormsen if the black bag which he had retrieved belonged to him, and that Gormsen responded, "Yes, this is my bag." [*Id.*]

3

or appeared; but that a summary of each witness was attached to his Report. [*Id.*, § III (C) (1)-(3)]

DHO Otero found Gormsen guilty of the PAC 113 offense as charged in the Incident Report. [*Id.*, § IV; *see also*, id., p. 2, § V, "Specific Evidence Relied on to Support Findings"] DHO Otero based his finding of guilt on Gormsen's admission that the pill was his; the information contained in the Incident Report; photographs taken of the pill discovered in Gormsen's sports bag; and the memorandum and supporting information from Physician's Assistant McNeil, which confirmed that the pill discovered in Gormsen's sports bag was Danabol. [*Id.*, p. 2, § V, "Specific Evidence Relied on to Support Findings"] DHO Otero also explained why he denied Gormsen's request to call CO Morales as a witness, stating:

> During the hearing you requested the presence of a witness and you called Officer A. Morales. Officer Morales could not be present during the hearing, but he submitted a supporting memo as his statement. This DHO took in consideration your statement and your witness statement, but officer Morales statement did not helped [sic] your case."

[*Id.*]

DHO Otero imposed the following sanctions: (1) the disallowance of seven (7) days of GTC; and (2) the loss of telephone and commissary privileges for sixty (60) days. [*Id.*, § VI "Sanction or Action Taken"]

Gormsen states that he was provided with a copy of the DHO report when it was issued, but that when he arrived at the BOP transport center in Atlanta, Georgia, officials there confiscated his copy of the DHO Report. [D. E. No. 1, pp. 2-3] Gormsen states that he arrived at FCI-Ashland on August 5, 2014, but that while trying administratively appeal his disciplinary conviction and sanction, he faced a series of obstacles, including but not limited to the fact that

4

he was unable to obtain a complete copy of the DHO Report.[4] [*Id.*, p. 3] Gormsen filed a BP-10 appeal to the BOP's Mid-Atlantic Regional Office ("MARO"), in which he alleged that he did not commit the prohibited act; that the DHO's decision was based on insufficient evidence; that the DHO Report contained numerous errors; that the DHO misrepresented his (Gormsen's) statement at the DHO hearing; that he did not admit to possessing a pill prohibited by PAC 113; and that he should have been found to have committed a lesser prohibited act, because the pill was not a drug, but was instead only a dietary supplement. *See* MARO appeal, D. E. No. 1-3, p. 2.

On November 6, 2014, "C." Eichenlaub, Regional Director of the BOP's Mid-Atlantic Regional Office ("MARO") denied Gormsen's BP-10 appeal, finding that DHO's findings were accurate, adequate, and based on the greater weight of the evidence, which Eichenlaub identified as the reporting officer's statement contained in the Incident Report; the supplemental reports from the prison's medical staff which confirmed that the Danabol pill is considered a drug, not a dietary supplement; and the fact that the medical staff had not prescribed the pill to Gormsen. Further, Eichenlaub explained that:

> Policy also provides that on appeals, the appropriate reviewing official (Regional Director) may approve, modify, reverse, or send back with directions, including ordering a rehearing, any disciplinary action of the DHO. The DHO report has been amended to more accurately reference the reason your requested witness did not appear at the hearing. Section III of the DHO report has been amended to more accurately reference your statement to the DHO at the hearing. Additionally, the DHO report has been amended to correct a typographical error in Section I of the report. You will receive an amended DHO report in the very near future.
> ....
> The DHO accurately and adequately explained to you in Section V of the amended DHO report the specific evidence relied on to find you committed the prohibited act.

---

[4] Gormsen alleges that he has obtained a copy of the DHO Report only by requesting it, and the Incident Report, through a Freedom of Information Act request. [*Id.*, p. 3, ¶ 8]

[*Id.*]

Eichenlaub concluded that the required disciplinary procedures were substantially followed; that the evidence supported the conviction; and that the sanctions were appropriate for the offense. [*Id.*]

Gormsen alleges that he submitted written requests to the FCI-Ashland staff seeking a copy of the amended DHO Report, but that he has never been provided with a copy of the amended DHO Report. [D. E. No. 1, p. 4, ¶ 10; *see also*, D. E. No. 1-4] On June 24, 2015, FCI-Ashland Case Manager "B." Koster issued a Memorandum stating that Gormsen's file did not contain a copy of the May 6, 2014, DHO Report, and that the amended DHO Report had not been received as of June 24, 2015. [D. E. No. 1-5]

On July 1, 2015, Gormsen appealed the MARO's decision to the BOP Central Office, asserting the same arguments which he had advanced to the MARO, (*i.e.*, that he had been denied due process during his disciplinary hearing), but he also alleged that he had never received a copy of the Amended DHO Report. [D. E. No. 1-6, p. 1] On August 4, 2015, the BOP Central Office rejected Gormsen's BP-11 appeal as untimely, stating that the MARO had denied Gormsen's BP-10 appeal on November 6, 2014, and that Gormsen needed to provide "staff verification" explaining why the untimely filing was not his fault. [D. E. No. 1-7] Gormsen filed this § 2241 petition on October 13, 2015.

## CLAIMS ASSERTED IN THE § 2241 PETITION

Gormsen seeks an order setting aside his disciplinary conviction and reinstating his forfeited GTC. Gormsen's specific claim is that because he has never been provided with a copy of his amended DHO Report, he has been, and continues to be, unable to properly appeal his

6

disciplinary conviction and sanction through the BOP's administrative remedy process. Gormsen alleges that he has "...effectively been denied a written record of the DHO action even though the amendments appear to change the reporting of material substantive and procedural details in the DHO report." [D. E. No. 1, pp. 6-7] Gormsen also contends that the BOP's failure to provide him with a copy of the amended DHO report constitutes a denial of the due process to which he is entitled pursuant to *Wolff v. McDonnell*, 418 U.S. 539 (1974).

In *Wolff*, the United States Supreme Court explained that when a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the inmate receive: 1) written notice of the charges at least 24 hours in advance of the disciplinary hearing; 2) a written statement by the fact finder as to the evidence relied on and reasons for the disciplinary action; 3) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; and 4) the assistance of staff or a competent inmate when the inmate is illiterate or when the issues are complex. *Wolff*, 418 U.S. at 564-566.

Gormsen seeks an order expunging his disciplinary conviction from his BOP record and reinstating his forfeited GTC.

## DISCUSSION

Accepting as true Gormsen's allegations that he has not received a copy of the amended DHO Report, he has not established a due process violation under *Wolff* which would entitle him to the habeas relief which he seeks.

First, as the BOP Central Office correctly concluded, Gormsen's BP-11 appeal was untimely. The MARO denied Gormsen's BP-10 appeal on November 6, 2014, which meant that

7

meant Gormsen could and should have submitted his BP-11 appeal to the BOP Central Office within thirty days of that date, *i.e.*, on or before December 6, 2014. In his response denying Gormsen's BP-10 appeal, MARO Regional Director "C." Eichenlaub clearly and expressly informed Gormsen that he had 30 days from that date (November 6, 2014) in which to appeal to the BOP's General Counsel (Central Office). Eichaenlaub did **not** state that his response/denial of Gormsen's BP-10 appeal was conditioned on either the issuance of the amended DHO report or its delivery to Gormsen, nor did Eichaenlaub inform Gormsen that his appeal time would be tolled until he received a copy of the amended DHO Report.

Had Gormsen filed his BP-11 appeal within the specified 30-day time-frame, he could have explained to the BOP Central Office that he had not been provided with a copy of the amended DHO Report. Gormsen did not, however, take that action; instead, he unilaterally concluded that the absence of the amended DHO Report prevented him from submitting an appeal to the BOP Central Office, and he waited until July 1, 2015, to submit his BP-11 appeal the BOP Central Office.

Before a prisoner may seek habeas relief under 28 U.S.C. § 2241, he must exhaust his administrative remedies within the BOP. *Fazzini v. Northeast Ohio Correctional Center*, 473 F.3d 229, 231 (6th Cir. 2006). Administrative exhaustion is necessary both to give the agency the first opportunity to correct its own mistakes and, should the disagreement persist, to provide a reviewing court with a complete and an adequate record to review the agency's actions. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). To ensure that the agency has the opportunity to review the substance of the action in question, a § 2241 petitioner must have fully and strictly

8

complied with the agency's rules for processing challenges to its actions, such as deadlines and filing requirements. *Woodford*, 548 U.S. at 88.

Under the BOP's administrative remedy process, the first level of appeal from a DHO decision is an appeal to the Regional Director. 28 C.F.R. § 542.14(d)(2). To appeal from a decision of the Regional Director, an inmate must appeal to the General Counsel within thirty calendar days of the date the Regional Director signed the response, absent a valid reason for delay. 28 C.F.R. § 542.15(a). Here, it is clear from the record (which Gormsen has provided) that by failing to submit a timely BP-11 appeal to the BOP Central Office, Gormsen failed to properly and timely exhaust his administrative remedies pursuant to § 542.15(a). Having failed to comply with the BOP's "critical procedural rules" for raising his due process claims, Gormsen's due process claim must be considered as unexhausted. *Woodford*, 548 U.S. at 88.

Second, even assuming that the original DHO Report had stated that Gormsen had strongly protested his guilt, not that he had *admitted* to possessing the pill, "some evidence" of Gormsen's guilt nevertheless existed in this case, in the form of the investigating officer's claims set forth in the Incident Report and Physician's Assistant McNeil's Memorandum. That evidence, even if disputed by Gormsen, was sufficient to justify the DHO's finding that Gormsen committed the charged offense of possessing an unauthorized substance.

As *Wolff* indicates, a DHO's decision to forfeit good time credits need not comport with the requirement of proof beyond a reasonable doubt which applies in criminal trials; the DHO need only base his or her decision on "some" evidence, or, the evidence is conflicting, on "the greater weight of the evidence," 28 C.F.R. § 541.8(f). *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985); *see also Kelley v. Warden, F.C.I. Elkton*, No. 4:13-CV-662, 2013 WL 4591921, at *5

9

(N. D. Ohio, Aug. 26, 2013) ("Although the evidence in this case might be characterized as limited, a DHO's finding does not rely on the same amount of evidence necessary to support a criminal conviction.")

The "some evidence" standard is a lenient one, and requires only that the "disciplinary decision is not arbitrary and does have evidentiary support." *Superintendent v. Hill*, 472 U.S. at 457. Even meager proof will suffice. *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000); *see also Williams v. Bass*, 63 F.3d 483, 486 (6th Cir. 1995). A district court has no authority under the guise of due process to review the resolution of factual disputes in a disciplinary decision; its role is not to re-try a prison disciplinary hearing, weigh the evidence, or independently assess witness credibility. *Hill*, 472 U.S. at 455; *Humphreys v. Hemingway*, 77 F. App'x 788, 789 (6th Cir. 2003). Further, the evidence need not logically preclude any conclusion but the one reached by the hearing officer in the disciplinary proceeding. *Falkiewicz v. Grayson*, 271 F.Supp.2d 942, 948 (E.D. Mich. 2003).

While Gormsen has protested his guilt and claims that he did not admit to possessing the pill, the law is clear that a DHO need not accept what the inmate perceives to be the "best" or most convincing or persuasive set of facts. *See Sarmiento v. Hemingway*, 93 F. App'x 65, 68 (6th Cir. 2004) (affirming the DHO's determination that the greater weight of the evidence supported his decision finding Sarmiento guilty of "tampering with a security device" in violation of PAC 208, even where the facts were in dispute); *Johnson v. Patton*, No. 06-CV-HRW, 2006 WL 950187, at *5 (E.D. Ky. April 12, 2006) ("While these facts are not one hundred percent conclusive of whether the petitioner violated Code 108, they are adequate facts

10

upon which to base a prison disciplinary conviction. They constitute "some" facts upon which the DHO was entitled to rely in finding the petitioner guilty of violating Code No. 108.")

Third, the DHO Report was admittedly amended in the manner described by the Eichenlaub, but those amendments would not have changed the fact that "some evidence" justified the DHO's finding that Gormsen was guilty of the PAC 113 offense. Eichenlaub stated that the DHO had been amended to (1) explain why Gormsen's "requested witness" did not appear at the hearing; (2) describe more accurately Gormsen's statement at the hearing; and (3) correct a typographical error in Section I of the DHO Report. [D. E. No. 1-3, p. 3] These enumerated amendments do not, however, suggest that the DHO's original findings and sanctions were in any way altered or modified when the DHO Report was amended, nor do they indicate that Gormsen's sanctions were increased as a result of the amendment. At best, the described amendments merely clarified what Gormsen said at the hearing, and why his proposed witness was not called to testify,[5] and corrected a typographical error in Section I of the DHO Report.

Title 28 C.F.R. § 541.8(h) directs the DHO to set out in specific terms the evidence relied upon in finding a prisoner guilty of misconduct; his or her decision; the sanction imposed; and the reasons for the sanctions imposed. However, the DHO is *not* required by regulation to

---

[5] The original DHO Report had already explained that CO "A." Morales was not called to testify because he had given a written statement which was not favorable to Gormsen. Prisoners have only a qualified right to call witnesses, and prison officials may evaluate a request for witnesses and refuse to provide them for various reasons. See *Wolff*, 418 U.S. at 566, 94 S.Ct. 2963. The scope of a prisoner's right to call and confront witnesses is committed to the sound discretion of prison officials." *Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991). "The prisoner's request [for a witness] should also be denied if officials affirmatively determine the ... testimony would be irrelevant, cumulative, or otherwise unnecessary for the committee to come to a fair resolution of the matter." *Id*. "Prison officials are not required to make a written record of the reasons for granting or denying a prisoner's request to call or confront a particular witness." *Id*. (citing *Wolff*, 418 U.S. at 566).

11

disclose or summarize the evidence relied upon for his or her decision. *See Henderson v. U.S. Parole Com'n*, 13 F.3d 1073, 1078 (7th Cir. 1994). In fact, a prison official may amplify his or her reasons for ruling against an inmate after the disciplinary hearing has ended. *See Cooper v. Lane*, 969 F.2d 368, 372, n. 2 (7th Cir. 1992); *see also Brown v. Rios*, 196 Fed. App'x 681, 684-85 (10th Cir. 2006) (disciplinary hearing officer's supplementation of prior report by stating reasons for imposing sanctions in prison disciplinary proceedings, together with correction of date of incident, did not impermissibly add facts not previously presented at hearing, in alleged violation of due process); *Roberson v. Sepanek*, No. 0:11-CV-38-HRW, 2012 WL 639465, at *4 (E. D. Ky. Feb. 27, 2012) (concluding that the DHO's omission of certain statements from the original DHO Report, which were later added to the amended DHO Report, did not mean that the original DHO was constitutionally defective, or that Roberson was deprived of his right to due process, because the DHO's failure to include those statements in the original DHO Report was only a harmless error).

Other courts have rejected similar claims from prisoners who have alleged that the significant delay in receiving a DHO Report violated their constitutionally protected rights. In *Jennings v. Hollingsworth*, No. 14-6881 (RBK), 2016 WL 880501 (D. N. J. Mar. 8, 2016), the DHO convicted prisoner Jennings of various offenses and disallowed 41 days of his GTC. *Id.* at *1. On remand from the MARO, the DHO did not conduct another hearing, but instead issued an amended DHO report in which he disallowed 54 days of GTC. *Id.* at *5. The amended DHO Report was issued on January 8, 2013, but Jennings did not receive notice of the amendment until September 18, 2013. *Id.* At that time, Jennnings filed a § 2241 petition, arguing that the failure to hold a rehearing, and the failure to provide him with timely notice of the amended

report denied him procedural due process. Respondent Hollingsworth responded that the remand process did not trigger any further procedural protection because it involved a mere administrative correction of a sanction, and that Jennings received all the process he was due in connection with the initial disciplinary hearing process. *Id.* at *5.

The district court denied Jennings's § 2241 petition, finding that he had not shown that he was prejudiced by the failure to timely receive a copy of the amended DHO report. *Id.* at *6. The district court found it "disturbing" that Jennings did not receive notice of the amended DHO report until eight months after it was issued, but it concluded that Jennings was nonetheless able to appeal the amended DHO report to both the Regional Director and to the Central Office, and that the delay had no prejudicial effect on Jennings. *Id.*

In denying the § 2241 petition in *Jennings*, the district court cited and relied on *Griffin v. Ebbert*, No. 14-4123, 2016 WL 54114 (3d Cir. Jan. 5, 2016). In Griffin, the prisoner/§ 2241 petitioner alleged that he had been denied his right to due process because he did not receive a copy of a DHO report until eighteen months after it was issued. The Third Circuit rejected that claim, stating:

> We recognize that, pursuant to the Supreme Court's decisions in *Wolff* and *Hill*, Griffin was entitled to a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." As the District Court explained, however, Griffin failed to demonstrate that he was prejudiced by the prison's apparent failure to promptly provide him with a copy of the DHO report. **Contrary to Griffin's contention, the regulations permit an inmate like Griffin to proceed through the administrative appeal process without a written DHO report as long as he states in his appeal the date of the hearing and the nature of the charges against him. In fact, Griffin did appeal the decision here.** Although he now complains that he had to rely on his "memory and/or a guess" in that appeal, he does not explain which portions of the DHO's written report he would have challenged if it had been in his possession.

13

*Id.* at \*2. (internal citations omitted) (emphasis added). Critically, the Third Circuit held in *Griffin* that "[i]n the absence of a showing of prejudice, we cannot say that Griffin was denied the process he was due." *Id.* (citing *Wilson v. Ashcroft*, 350 F.3d 377, 381 (3d Cir. 2003)).

Here, Gormsen was provided with the original DHO Report from which he submitted a BP-10 appeal to the MARO, asserting therein numerous, specific challenges to his disciplinary conviction. Thus, under the rationale set forth in both *Griffin* and *Jennings*, Gormsen was able to, and did, appeal his disciplinary conviction and sanction to the MARO, so Gormsen's administrative appeal rights were not prejudiced or in any way adversely affected. The MARO addressed and rejected all of Gormsen's due process and sufficiency of the evidence challenges, explaining that based on the Incident Report and other documents obtained during the investigative process, the DHO had "some evidence" on which to base his finding of guilt. The MARO further explained how the original DHO Report had been amended. Even so, Gormsen failed to submit a timely appeal to the BOP Central Office, and his failure to timely appeal that MARO's adverse ruling to the BOP Central Office is not justified by the fact that he did not have in his possession the amended DHO report.

Clearly, it would have been preferable if someone in the BOP (either from the FPC-Montgomery or the MARO), had provided Gormsen with a copy of the amended DHO report, but the BOP's failure to do so does not amount to a constitutional violation of Gormsen's due process rights, because even without the amended DHO Report, Gormsen took the first step of the BOP's administrative remedy process and could have taken the second and final step, had he attempted to do so within the specified thirty-day time frame. Like Prisoner Jennings, Gormsen

14

simply has not established that the BOP's failure to provide him with the amended DHO caused him to suffer any actual prejudice.[6]

Finally, the Court notes that Gormsen was convicted of violating PAC 113, which is listed as "Greatest Severity" infraction in the BOP's Prohibited Acts Table. *See* 28 C.F.R. § 541.3 (Table 1-Prohibited Acts and Available Sanctions; Greatest Severity Level Prohibited Acts). Gormsen, however, was ordered to forfeit only **seven (7) days** of GTC. *See* D. E. No. 1-3, p. 2, § VI "Sanction or Action Taken." Under § B.1. of Table 1 of § 541.3, the DHO was authorized to disallow between 50% and 75% **(27-41 days)** of good conduct time credit available for year. *See* Table 1, 28 C.F.R. § 541.3 ("Available Sanctions for Greatest Severity Level

---

[6] In *Brown v. McGrew*, No. EDCV 12-1479-SVW(JPR), 2013 WL 6512948, a prisoner filed a § 2241 petition, complaining that he did not receive the DHO Report until after the expiration of the 15-day period set forth in BOP Program Statement 5270.09. The district court rejected Brown's claim after concluding that Brown had received the DHO Report within 15 *working days* of its issuance. *Id.* at *5. But the district court further explained that even if Brown had not received the report within 15 working days of its issuance, he would have no due process claim because *Wolff* requires only that an inmate be given "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action," and does *not* require that the inmate receive that written statement within any particular amount of time. *Id.* (citing Wolff, 418 U.S. at 564–65) Further, the district court explained that even if the DHO's alleged failure to deliver his report to Brown on time qualified as constitutional error, the error would be harmless, because Brown properly exhausted his administrative remedies by appealing the DHO's decision and timely filed his § 2241 petition. *Id.* at *6. Again, that rationale applies to Gormsen, who appealed to the MARO but failed to submit a timely appeal to the BOP Central Office. *See also Stine v. David Berkebile, Warden, ADX*, No. 14-CV-01829-RBJ, 2015 WL 1588920, at *4 (D. Colo. Apr. 6, 2015) ("Because there is not a prescribed time limitation set forth in *Wolff* for providing the written statement, Applicant does not have a per se due process right to receive a statement of the evidence relied on or reasons for the disciplinary action within a certain time period. Applicant's contention that the delay in authoring the report raises "serious concerns about the accuracy of the report" is conclusory and vague and fails to demonstrate Applicant was prejudiced by the one month delay in the authoring of the report."); *Menas v. O'Brien*, No. 7:06-CV-26, 2006 WL 13457744, at *9 (W. D. Va. May 23, 2006) (denying § 2241 petitioner's claim that his rights were violated because he was not informed of the reason for a minor change/amendment to the DHO report, where the petitioner alleged no prejudice resulting from the amendment).

15

Prohibited Acts"). Thus, the DHO disallowed far fewer days of Gormsen's GTC than he could have disallowed under the BOP regulation.

Because Gormsen is not entitled to relief from his disciplinary conviction or the forfeiture of seven (7) days of GTC, his § 2241 habeas petition will be denied.

## CONCLUSION

Accordingly, for the reasons discussed above, it is hereby **ORDERED** as follows:

1. Petitioner Erin Kenneth Gormsen's 28 U.S.C. § 2241 petition for a writ of habeas corpus [D. E. No. 1] is **DENIED.**

2. The Court will enter an appropriate judgment.

3. This habeas proceeding is **DISMISSED** and **STRICKEN** from the Court's docket.

This March 29, 2016.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge